```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT

JOHNATHAN MATSON,              :
                               :
     Plaintiff,                :
                               :
     v.                        :    Case No. 2:14-cv-171
                               :
JOSEPH SZAREJKO,               :
                               :
     Defendant.                :
```

## OPINION AND ORDER

Plaintiff Johnathan Matson brings this action claiming that Defendant Joseph Szarejko, a Trooper with the Vermont State Police, caused him to be unlawfully detained in jail overnight. Trooper Szarejko now moves for summary judgment, arguing that he misunderstood the instructions he received from a state court judge, and that he cannot be held liable for that misunderstanding. For the reasons set forth below, the motion for summary judgment is **granted** and this case is **dismissed**.

## Factual Background

On August 4, 2011, Johnathan Matson's now ex-wife, Carey Stoudt, filed a state court complaint seeking relief from abuse as a result of Matson's alleged behavior. The next day, the Vermont Superior Court issued a Temporary Relief from Abuse Order. Among other things, the temporary order barred Matson from entering the family residence without Stoudt's permission; required him to stay at least 300 feet from Stoudt, her residence, and her place of employment; and barred him from

contacting Stoudt in any way, including telephone calls, except to arrange for limited telephone or computer contacts with the couple's children. The court set a hearing for August 9, 2011.

On August 7, 2011, Stoudt alerted police that Matson had violated the temporary order multiple times since being served. At approximately 7:30 that evening, Trooper Szarejko traveled to Matson's apartment and questioned him about the allegations. Based upon his conclusion that Matson had committed thirteen separate violations of the temporary order, including several phone calls to Stoudt, he placed Matson under arrest and transported him to the State Police barracks in New Haven, Vermont.

While Matson was being processed, and because the arrest occurred in the evening, Trooper Szarejko contacted Vermont Superior Court Judge Harold Eaton by phone to determine Matson's bail and conditions of release. According to Trooper Szarejko, Judge Eaton ordered conditions of release, cited Matson to appear in court the following day, and confirmed that there would be no bail. Trooper Szarejko then executed a conditions of release form on which he wrote "no bail." The form also directed that Matson could not contact Stoudt or enter her home, could not buy firearms or other dangerous weapons, and that he must appear in court the next day at 12:30 p.m.

Based upon his conversation with Judge Eaton, Trooper

Szarejko believed that Matson was to be held without bail until his court appearance.  As he explained in his deposition: "So I assumed that with all these violations of this court order, that -- and with him being cited for 12:30 the next day, that it was hold without bail, considering the offenses."  ECF No. 37-7 at 15.  When asked why the judge would set conditions of release and then order a hold without bail, Trooper Szarejko responded: "I just thought the judge said, you know, no bail, that, you know, he can't -- he's going to jail, and there's no way he can get out until he goes to court."  *Id.*

Trooper Szarejko briefly discussed Judge Eaton's order with his supervisor, Sergeant Stephen McNamara.  Sergeant McNamara noted that people are not often held without bail, *id.* at 16, and asked Trooper Szarejko whether the judge intended for "no bail and hold or release on a citation."  ECF No. 37-8 at 7-8.  Trooper Szarejko reportedly replied: "Judge Eaton stated no bail."  ECF No. 37-8 at 8.

Sergeant McNamara, an 18-year veteran of the Vermont State Police, did not challenge Trooper Szarejko's conclusion.  In an affidavit submitted in support of the summary judgment motion, he states that conditions of release and detention are not mutually exclusive, as "[c]onditions of release are set in order to prevent an inmate from further harassing a victim while he is still incarcerated, for example, by making telephone calls or

3

sending letters." ECF No. 37-15 at 1. Sergeant McNamara testified in his deposition that he could not recall a judge ever releasing a person accused of violating a relief from abuse order. ECF No. 37-15 at 14-15.[1]

Once Matson completed processing at the State Police barracks, Trooper Szarejko transported him to the Addison County Sheriff's jail and informed relevant personnel that Matson was to be held without bail. The next day, Matson was transported to court and charged with five counts of violating the Temporary Relief from Abuse Order. After his court appearance, Matson was released from custody.

Matson ultimately pled guilty to one count of violating the Temporary Relief from Abuse Order. On August 25, 2011, acting on a motion for clarification filed by defense counsel, Judge Eaton issued a handwritten order stating: "The Court set conditions of release and did not impose any bail. There would be no purpose

---

[1] Matson objects to this testimony, arguing that it is not credible and is unreliable because: (1) the law prohibits detention without bail for a misdemeanor offense, (2) according to Trooper Szarejko, Sergeant McNamara questioned the "no bail" order and therefore must have suspected the Judge Eaton intended release, and (3) Sergeant McNamara testified only about his recollection and had difficulty recalling specific cases. While at summary judgment a court may not make weight or credibility determinations, *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996), the Court finds that none of Matson's objections undermine Sergeant McNamara's testimony. Sergeant McNamara was testifying about his experience generally. He was not testifying about the law, the specifics of Judge Eaton's order, or any specific case in which he was personally involved. Furthermore, while the basis for Sergeant McNamara's reasoning may be contested, the ultimate material fact is that he did not challenge Trooper Szarejko's interpretation.

in setting conditions had the [C]ourt ordered a hold without bail.  This is a conditions only release."  Matson submits that Judge Eaton's order clarified the intent of his conversation with Trooper Szarejko on the evening of August 7, 2011.

Matson's Complaint asserts a cause of action entitled "False Arrest," in which he claims that he was unreasonably seized in violation of his Fourth Amendment rights and denied his Fourteenth Amendment due process rights.  For damages, he claims one day's lost wages, humiliation, emotional distress, and loss of liberty.  The second count in the Complaint is for punitive damages.

## Discussion

### I.   Summary Judgment Standard

Summary judgment must be granted when the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A fact is 'material' ... when it 'might affect the outcome of the suit under the governing law[,]'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a

reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004) (internal quotation marks omitted).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. [Rather], the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citations, emphasis, and footnotes omitted).

**II. Liability for Matson's Detention**

In moving for summary judgment, Trooper Szarejko first argues that Matson's guilty plea and conviction defeat his claim of false arrest. *See, e.g., Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) (concluding that "where law enforcement

officers have made an arrest," conviction is a defense to a Section 1983 action asserting that the arrest was made without probable cause).  However, Matson is not challenging the grounds for the arrest itself, but rather the constitutionality of the detention thereafter.  The fact of a guilty plea plays no role in evaluating whether Trooper Szarejko's actions – detaining Matson overnight after a state court judge intended a release on conditions – violated Matson's rights.

Trooper Szarejko next argues that Matson has failed to state a valid claim of excessive detention.  Again, Szarejko's argument mischaracterizes the claim, as Matson is not challenging the length of his detention after arrest, but rather the fact that he was detained at all.  It is Trooper Szarejko's failure to carry out the Judge's intent, and not the duration of the detention, that is at issue.

In any event, Troop Szarejko contends that his actions are protected by two types of immunity: qualified immunity and judicial immunity.  Qualified immunity "'shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'"  *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).  The doctrine balances two important interests: the need to hold public

officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation."  *Rogoz*, 796 F.3d at 247 (alteration and emphasis in original) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)).  With respect to the second inquiry, "clearly established" means "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

While protecting the reasonable performance of official duties, qualified immunity allows for mistakes.  As recently explained by the Second Circuit, qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Rogoz*, 796 F.3d at 247 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).  The docrtine "protects government officials when they make

'reasonable mistakes' about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)), and applies to mistakes of law, mistakes of fact, and mistakes based on mixed questions of law and fact, *Pearson*, 555 U.S. at 231.  A court may deny a motion for summary judgment on qualified immunity grounds where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice."  *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995).

   Here, Trooper Szarejko mistakenly believed the Judge Eaton had ordered a hold without bail.  With respect to the violation of any constitutional rights, there can be little debate that it is unlawful to detain an arrestee after a judge has ordered his release and without any intervening cause.  The question therefore turns to whether it was reasonable for Trooper Szarejko to believe that his actions were lawful.

   The facts of this case are largely undisputed.  Matson was arrested after Trooper Szarejko identified thirteen violations of a relief from abuse order over a two-day period.  Because the arrest occurred in the evening, Trooper Szarejko contacted a judge via telephone to obtain direction as to bail and conditions of release.  The judge ordered conditions, specified no bail, and set a hearing for the next day. Based upon this conversation, Trooper Szarejko assumed that the judge had ordered a hold

without bail, and proceeded accordingly.

Viewing the facts in a light most favorable to Matson, questions arise about the reasonableness of Trooper Szarejko's interpretation.  One such question is whether the conditions of Matson's release, which included staying away from Stoudt's home and refraining from buying weapons, were consistent with a hold order.  Matson also draws support from the after-the-fact order from Judge Eaton, which reportedly reveals that he had intended to release Matson on "conditions only."  ECF No. 44-2 at 1.

Even considering these facts, however, the inquiry with regard to qualified immunity is whether Trooper Szarejko's actions were so unreasonable as to rise to the level of "plainly incompetent."  *Hunter*, 502 U.S. at 229.  The Trooper's own explanation is that given Matson's number of violations, and with a hearing scheduled for the following day, he assumed the judge intended a hold without bail.  His reasoning was bolstered by the reaction of his superior, Sergeant McNamara.  Sergeant McNamara testified in his deposition that he had never known of a judge releasing a person accused of violating a relief from abuse order.  ECF No. 37-78 at 15 (Q: So are you saying that your experience is that people charged with misdemeanor violation of abuse prevention order charges are held with no bail?  A: That has been my experience, sir.").  He also believes that conditions of release and detention are not necessarily inconsistent.

Accordingly, he did not question Trooper Szarejko's determination.

Matson contends that Trooper Szarejko's actions were unreasonable because they violated specific provisions of Vermont law. Under the Vermont Constitution, a person is entitled to bail unless: the allegation involves a crime punishable by life in prison; the person is charged with a violent felony and there is no set of conditions that can reasonably protect the public; or the person is awaiting sentencing or has been sentenced pending appeal. Vt. Const. Ch. II § 40. Obviously, none of these exceptions applies here. Matson thus argues that Trooper Szarejko should have known that his understanding of Judge Eaton's "no bail" instruction was erroneous.

Trooper Szarejko counters that it is not clearly established whether the right to bail applies prior to an arraignment.[2] However, as a practical matter, bail became an issue when Trooper Szarejko telephoned Judge Eaton to ask for instructions as to bail and/or release conditions. Indeed, after speaking with Judge Eaton, Trooper Szarejko completed a form that specifically contemplated a potential bail amount. ECF No. 37-9 at 2.

---

[2] Trooper Szarejko also cites Rule 3 of the Vermont Rules of Criminal Procedure, which provides that a person arrested for a misdemeanor offense may be taken into custody – as opposed to released on a citation – under certain conditions. Vt. R. Crim. P. 3(f). Those circumstances include violation of a relief from abuse order. Vt. R. Crim. P. 3(c)(6). While this Rule justifies Matson's arrest and initial custody, it does not address his continued custody after Judge Eaton apparently ordered a release on conditions.

Regardless of the constitutional right at issue, the central question is whether a reasonable officer would have believed that holding Matson overnight without bail was lawful. Judge Eaton ordered "no bail," and Trooper Szarejko accepted those words at face value, assuming that the detention was based upon the number of alleged violations and the fact of a court appearance the next day. His actions, it was later revealed, were mistaken.

Nonetheless, the undisputed facts demonstrate that Trooper Szarejko was acting reasonably, as even in the eyes of a supervisor with many years of experience, there was little reason to challenge Judge Eaton's apparent determination that Matson should be held overnight and delivered to court the next day. *See Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (holding that the dispositive inquiry "is whether it would have been clear to a reasonable officer in the agents' position that their conduct was unlawful in the situation they confronted") (internal quotation marks, citations, and brackets omitted). Furthermore, there is no indication that the Trooper's actions were malicious, or that he knowingly violated the law. Accordingly, the Court finds as a matter of law that qualified immunity applies, and that Matson has no basis for recovering damages, punitive or otherwise. The motion for summary judgment is **granted**.[3]

---

[3] Because Trooper Szarejko's conduct is protected by qualified immunity, the Court need not reach the matter of judicial immunity.

## **Conclusion**

Trooper Szarejko's motion for summary judgment (ECF No. 37) is **granted** on the basis of qualified immunity, and this case is **dismissed**.

Dated at Burlington, in the District of Vermont, this 8th day of July, 2016.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
